## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ANNE DORMAN,** | § | **CIVIL ACTION NO. 4:11-cv-02410** |
| **COREY REAGIN,** | § | |
| **SHERRI REAGIN,** | § | |
| **and OTHERS SIMILARLY** | § | |
| **SITUATED,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **COLLECTIVE ACTION REQUESTED** |
| | § | |
| **CYTEX PLASTICS, INC.,** | § | |
| **and DAVID M. BURG,** | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' MOTION FOR CONDITIONAL
## CERTIFICATION AS A FLSA COLLECTIVE ACTION
## AND MOTION TO STRIKE VOID WAIVERS OF FLSA CLAIMS

# TABLE OF CONTENTS

COVER PAGE...................................................................................................................... i

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iv

TABLE OF EXHIBITS...................................................................................................... vii

I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING......... 2

II.     STATEMENT OF ISSUE TO BE RULED UPON: CONDITIONAL
       CERTIFICATION AS A FLSA COLLECTIVE ACTION...................................... 3

      A.     The FLSA Encourages Parties To Resolve Overtime Disputes Collectively ... 3

      B.     FLSA Collective Actions Are Certified In Two Stages................................. 4

III.     SUMMARY OF FACTS AND ARGUMENT ......................................................... 5

      A.     Before This Lawsuit, Cytex Classified All Salaried Workers As Exempt........ 5

      B.     Cytex Recently Reclassified Almost All Salaried Workers As
           Non-Exempt ................................................................................................... 5

      C.     Plaintiff Dorman's Varied Positions At Cytex ............................................. 6

      D.     Plaintiff Dorman Was Initially Paid Overtime ............................................. 6

      E.     Plaintiff Dorman's Final Work As A Liaison Between The Sales And
           Warehouse Employees.................................................................................. 7

      F.     Plaintiff DeFrancesco's Work In The Accounting Department ................... 7

      G.     Plaintiff Sherri Reagin's Sales/Customer Service Work .............................. 9

      H.     Plaintiff Corey Reagin's Print And Bind Production Work .......................... 9

IV.     CONDITIONAL CERTIFICATION SHOULD BE GRANTED .......................... 10

      A.     The Putative Class Must Be Similarly – Not Identically -- Situated .............. 10

|     | B.  | The Court May Certify A Class Of Multiple Job Titles ............................... 10 |
|     | C.  | The Four Named Plaintiffs And Putative Class Members Are Similarly Situated...................................................................................................... 11 |
|     |     | 1.  Same facility .......................................................................................... 11 |
|     |     | 2.  Same managers ...................................................................................... 12 |
|     |     | 3.  Subject to same policies ....................................................................... 12 |
|     |     | 4.  Given settlement offers and reclassified ................................................ 12 |
|     |     | 5.  Back-up for one another and/or similar position..................................... 13 |
|     |     | 6.  The sales/customer service employees received commissions for which they were not paid overtime ................................................................... 14 |
|     | D.  | Other Personnel Who Were Denied Overtime May Want To Join This Collective Action .......................................................................................... 15 |
| V.  | PLAINTIFFS HAVE PROPOSED AN APPROPRIATE CLASS NOTICE ................................. 15 |
| VI. | THE PURPORTED "RELEASES" THAT DEFENDANTS PRESENTED WITH UNSOLICITED BACK WAGE PAYMENTS ARE VOID WARRANTING ADDITIONAL CURATIVE LANGUAGE IN THE CLASS NOTICE ........................................................................... 16 |
| CONCLUSION ................................................................................................................. 19 |

# TABLE OF AUTHORITIES

## Cases

*Beall v. Tyler Techs., Inc.*,
2009 WL 1766141 (E.D. Tex. June 23, 2009)........................................................... 11

*Belt v. EmCare, Inc.*,
299 F. Supp.2d. 664 (E.D. Tex. 2003)..................................................................... 17

*Bollinger v. Residential Capital, LLC*,
761 F. Supp. 2d 1114 (W.D. Wash. 2011)............................................................... 13

*Brooklyn Savings Bank v. O'Neil*,
324 U.S. 697 (1945)......................................................................................... 16, 17

*D.A. Schulte, Inc. v. Gangi*,
328 U.S. 108 (1946)............................................................................................... 16

*Camp v. Progressive Corp.*,
2002 WL 31496661 (E.D. La. Nov. 8, 2002) .................................................... 10, 11

*Champneys v. Ferguson Enters. Inc.*,
2003 WL 1562219 (S.D. Ind. Mar. 11, 2003).......................................................... 11

*Donovan v. Grantham*,
690 F.2d 453, 457 (5th Cir. 1982).......................................................................... 14

*Ebbs v. Orleans Parish School Bd.*,
2007 WL 2127699 (E.D. La. July 24, 2007)............................................................ 10

*Falcon v. Starbucks Corp.*,
580 F. Supp.2d 528 (S.D. Tex. 2008) .................................................................. 3, 10

*Foraker v. Highpoint Southwest Services, L.P.*,
2006 WL 2585047 (S.D. Tex. Sept. 7, 2006) .......................................................... 16

*Friedman v. Intervet, Inc.*,
2010 WL 3087432 (N.D. Ohio Aug. 6, 2010) ......................................................... 18

*Gulf Oil Comp. v. Bernard*,
452 U.S. 89 (1981)................................................................................................. 17

*Herring v. Hewitt Associates, Inc.*,
2007 WL 2121693 (D. N.J. July 24, 2007)............................................................. 11

*Hoffman-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989) ..................................................................................... 3, 14, 15

*McCauley v. First Option Mortg., LLC*,
2010 WL 3522316 (E.D. Mo. Sept. 2, 2010)........................................................... 14

*McCumber v. Eye Care Ctr. of Am., Inc.*,
2011 WL 1542671 *2 (M.D. La. Apr. 20, 2011) .................................................... 16

*Mooney v. Aramco Services Co.*,
54 F.3d 1207 (5th Cir. 1995)..................................................................................... 4

*Moore v. Special Distribution Serv., Inc.*,
2007 WL 2318478 (S.D Tex. Aug. 8, 2007)............................................................. 4

*Ralph Oldsmobile, Inc. v. General Motors Corp.*,
2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001)......................................................... 18

*Ritzer v. UBS Fin. Servs., Inc.*,
2008 WL 4372784 (D.N.J. Sep. 22, 2008) ............................................................. 11

*Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*,
2006 WL 1007542 (S.D. Tex. Apr. 17, 2006) ........................................................ 15

*Simmons v. T-Mobile USA, Inc.*,
2007 WL 210008 (S.D. Tex. Jan. 24, 2007) ........................................................... 15

*Smallwood v. Illinois Bell Tel. Co.*,
710 F. Supp. 2d 746, 752 (N.D. Ill. 2010) ............................................................. 13

*Villatoro v. Kim Son Rest., L.P.*,
286 F. Supp.2d 807, 811 (S.D. Tex. 2003) ....................................................... 10, 12

*Watson v. Travis Software Corp.*,
2008 WL 5068806 (S.D. Tex. Nov. 21, 2008)........................................................ 10

*Westerfield v. Quizno's Franchise Co.*,
2007 WL 1062200 (E.D. Wis. Apr. 6, 2007)........................................................... 18

v

*Williams v. Securitas Sec. Services USA, Inc.*,
2011 WL 2713741 (E.D. Pa. July 13, 2011)........................................................... 18

## Statutes & Regulations

29 U.S.C. § 211 ................................................................................................... 2
29 U.S.C. § 216 ............................................................................................... 2, 3
29 C.F.R. § 778.117 ....................................................................................... 9, 14

# TABLE OF EXHIBITS

Curtis Parmer Deposition Testimony ................................................................................. 1
Ellen Miles Deposition Testimony .................................................................................... 2
Dorman Letter of Reference ............................................................................................... 3
Anne Dorman Deposition Testimony ................................................................................ 4
Donna DeFrancesco Deposition Testimony ...................................................................... 5
Affidavit of April L. Walter ............................................................................................... 6
Ostensible "Release" that Cytex Drafted for Putative Class Members [Filed Under Seal] 7
Confidentiality Agreement ................................................................................................. 8
Exemplar Paystubs for Sherri Reagin ............................................................................... 9

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AS A FLSA COLLECTIVE ACTION AND MOTION TO STRIKE VOID WAIVERS OF FLSA CLAIMS

Defendant Cytex Plastics Inc. ("Cytex") has violated the Fair Labor Standards Act ("FLSA") by misclassifying as exempt from overtime pay any and all employees that it paid a salary – without *any* regard to the job duties performed by the employee. (Ex. 1, Parmer Depo., 84:15-85:18 & 125:17-20; Ex. 2, Miles Depo., 82:12-85:3.) Cytex's executive managers, thus, adhered to the myth that "salaried" was synonymous with "exempt." All salaried workers were victims of this erroneous belief.

As a result of this lawsuit brought by four former employees who held salaried positions in the accounting, sales/customer service, print and bind production, and warehouse control/shipping and receiving departments, Cytex recently offered unsolicited (and therefore, ineffective, as discussed further below) settlements to its then current salaried employees and reclassified them as non-exempt. (Ex. 1, Parmer Depo., 226:4-230:25; Ex. 2, Miles Depo., 230:25-232:9.)[1] An example of the ostensible "release" that Cytex drafted for putative class members to sign to receive unsolicited back wage payments (without any provision for liquidated damages; going back only two years, instead of three as allowed for willful violations of the FLSA; and calculating unpaid overtime at a half-time, instead of time-and-a-half rate) is submitted under seal[2] as Exhibit 7.

The universal company-wide errant policy that "salaried" meant "exempt, the similarity of duties between Plaintiffs and their co-workers, and the subsequent reclassification of the

---

[1] On December 1, 2011, Cytex's facility was acquired by Pexco, LLC, which is not a party to this action. (Ex. 1, Parmer Depo., 5:19-25; Ex. 2, Miles Depo., 5:20-25.) Plaintiffs are informed and believe the reclassification of employees from overtime exempt to non-exempt occurred prior to Pexco taking over Cytex.

[2] Plaintiffs file Exhibit 7 under seal because Defendants stamped it "Confidential" under a "Confidentiality Agreement" the parties entered to facilitate discovery, which is submitted as Exhibit 8. As the designating party, it is Defendants' burden to show good cause for protecting this document from public disclosure.

1

positions demonstrate a reasonable basis that these employees are similarly situated for purposes of conditional certification. Defendants also failed to factor the commission income of commissioned employees (such as Mrs. Reagin) into their regular rate of pay when calculating overtime earnings, as required under the FLSA.

Plaintiffs respectfully request that the Court grant conditional certification of a collective action under the FLSA to include the following categories of individuals:

**All salaried exempt employees with the primary duties of accounting and/or payroll work; inside sales and/or sales support work; shipping and receiving-related work; and print and bind production work, including, but not limited to, those employees who recently had their position reclassified from exempt to non-exempt or were offered unsolicited settlements of their unpaid overtime claims, who worked for Cytex within the past three years.**

**All hourly non-exempt sales or customer service employees who received commissions, but whose commissions were not included in the calculation of their overtime compensation.**

The Court should also take measures to promote accurate and timely notice to the potential class members. First, the Court should approve the Plaintiffs' proposed Notice of Fair Labor Standards Act Lawsuit to be sent to all individuals in the class. Cytex should also be compelled to turn over the full names and all last-known addresses, telephone numbers, and e-mail addresses for the class members. These measures are necessary to clearly and efficiently inform the class members of their right to join this collective action, maximizing the benefits of conditional certification to resolve as many individual claims as possible in this single action.

# I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.

Plaintiffs bring this civil action pursuant to the FLSA to recover unpaid overtime, an additional equal amount as liquidated damages, and attorneys' fees and costs. 29 U.S.C. §§ 211

& 216.[3]  Plaintiffs Dorman, C. Reagin, and S. Reagin filed their Original Complaint on June 27, 2011.  (Docket No. 1.)  Plaintiffs filed their First Amended Complaint – adding Plaintiff DeFrancesco – on July 21, 2011.  (Docket No. 5.)

Defendants took the depositions of Plaintiffs Dorman and DeFrancesco on January 19, 2012.  (*See* Exs. 4-5.)  Plaintiffs took the deposition of two of Defendants' four executive managers – Ellen Miles, Administrator, and Curtis Parmer, General Manager – on, respectively, January 31 and February 9, 2012.  (*See* Exs. 1-2.)  Trial is set for September 24, 2012.  (Docket No. 12.)

## II.  STATEMENT OF ISSUE TO BE RULED UPON:  CONDITIONAL CERTIFICATION AS A FLSA COLLECTIVE ACTION.

### A.  The FLSA Encourages Parties To Resolve Overtime Disputes Collectively.

The FLSA permits employees to bring collective actions on "behalf of…themselves and other employees *similarly situated*."  29 U.S.C. § 216(b) (emphasis added).  Congress has therefore "stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (employing Section 16(b) of the FLSA, as incorporated into the ADEA).  A collective action allows FLSA plaintiffs to pool their resources, while promoting judicial efficiency by resolving common issues of law and fact in the same proceeding.  *Id.*  Without a collective action, individual plaintiffs "can hardly be expected to pursue…small claims individually."  *Falcon v. Starbucks Corp.*, 580 F. Supp.2d 528, 541 (S.D. Tex. 2008) (Ellison, J.).  These benefits cannot be realized unless employees receive "accurate and timely notice" of the pending collective action to decide if they

---

[3] Ms. Dorman also brings a wrongful termination claim arising out of the Defendants' conduct of retaliating against her by firing her the day after she brought issues of ERISA compliance to the Defendants' attention, and Ms. DeFrancesco brings a wrongful termination claim arising out of the Defendants' conduct of retaliating against her by firing her within a week after she brought issues of child labor law violations under the FLSA to the Defendants' attention. (*See* Docket No. 5, ¶¶ 38-63.)  Neither of the two wrongful termination claims is at issue in this Motion.

3

will join. *Hoffman-La Roche*, 493 U.S. at 170. This Motion seeks conditional certification of a collective action under the FLSA to include the categories of individuals similarly situated to named plaintiffs Dorman, DeFrancesco, C. Reagin, and S. Reagin.

## B. FLSA Collective Actions Are Certified In Two Stages.

Texas district courts have consistently followed the methodology described in *Mooney v. Armaco Service Co.*, 54 F.3d 1207 (5th Cir. 1995) for certifying FLSA collective actions. *See, e.g., Moore v. Special Distribution Serv., Inc.*, 2007 WL 2318478, *1 (S.D Tex. Aug. 8, 2007) (Harmon, J.). Under *Mooney*, a district court "approaches the 'similarly situated' inquiry via a two-step analysis." *Mooney*, 54 F.3d at 1213.

The first stage seeks court permission to send notices to the affected class members. *Id.* at 1214. Here, the district court examines "the pleadings and any affidavits which have been submitted," and it determines "whether notice of the action should be given to potential class members." *Id.* "Because the court has minimal evidence, this determination is made using a fairly *lenient* standard." *Id.* (emphasis added). The stage "*typically* results in 'conditional certification' of a representative class." *Id.* (emphasis added). If a court conditionally certifies a class, class members are "given notice and the opportunity to 'opt-in'" and the suit "proceeds as a collective action throughout discovery." *Id.*

After the opt-in period and follow-up discovery has been largely completed, the defendant usually begins the second stage by filing a motion for decertification. *Id.* The court now has "much more information on which to base its decision," and it "makes a factual determination" on whether the class members are similarly situated. *Id.*

4

## III. SUMMARY OF FACTS AND ARGUMENT.

### A. Before This Lawsuit, Cytex Classified All Salaried Workers As Exempt.

Cytex manufactures and sells retail signs and displays. (*See* www.rdccytex.com.) Until

this lawsuit, Cytex had a universal policy of classifying all salaried employees as exempt from

overtime, regardless of their duties:

> "[Q.] After she [Anne Dorman] was switched to salary, was she still eligible for overtime pay?
> A. Okay. My understanding had always been that salaried people did not receive overtime and hourly people did.
> Q. Did you have any prior understanding that you also look at the job functions that the salaried employee worked to determine if they should receives [*sic*] overtime or not?
> A. No.
> Q. You just understood salary equals no overtime?
> A. Yes.
> Q. Did Ms. Dorman's job functions change in any way between February 19th, 2010, when she was hourly and February 20th, 2010, when she was converted to salary?
> A. Not to my knowledge.
> Q. Did her regular schedule change when that conversion was made?
> A. No."

(Ex. 1, Parmer Depo., 84:25-85:18; 226:4-230:25 ("[O]ur understanding the whole time was

salaried people did not get overtime and hourly did. But because of this lawsuit, there's some

nuances in the laws that say that salaried people are entitled to overtime."); Ex. 2, Miles Depo,

82:12-85:3.)

### B. Cytex Recently Reclassified Almost All Salaried Workers As Non-Exempt.

Since this lawsuit, Cytex has reclassified almost all such employees as non-exempt,

excluding its executive managers (Curtis Parmer, Ellen Miles, and Ken Descamps) and two non-

executive employees (Geno Avalos and Josh Lopez). (Ex. 1, Parmer Depo, 226:4-230:25;

152:25-153:3; 159:2-10; 173:1-4.) The salaried staff that were subjected to this errant policy and

are similarly situated to the four lead Plaintiffs can be classified into four main groups: **(1)**

accounting department employees (represented by Plaintiffs DeFrancesco and Dorman); **(2)** sales/customer service department employees (represented by Plaintiffs Dorman and Sherri Reagin); **(3)** print and bind production employees (represented by Plaintiff Corey Reagin), and **(4)** warehouse control/shipping and receiving employees (represented by Plaintiff Dorman).

Cytex also made unsolicited settlement offers to the employees similarly situated to the four lead Plaintiffs and reclassified them to become overtime eligible. (Ex. 1, Parmer Depo., 226:4-230:25; Ex. 2, Miles Depo., 230:25-232:9.) Any purported releases executed by the putative class members in exchange for these payouts would be void since they involve *coverage* issues under the FLSA.

## C. **Plaintiff Dorman's Varied Positions At Cytex.**

Plaintiff Dorman started working for Cytex in 2004. (Ex. 2, Miles Depo., 77:18-78:16.) In a letter of reference that Cytex's General Manager and second-in-command (Curtis Parmer) prepared for Ms. Dorman after he fired her, Mr. Parmer wrote that "during her tenure at RDC Cytex, she held several different roles ranging from accounting, to order entry, order processing, shipping/receiving and scheduling our production orders." (Ex. 3, Dorman Letter of Reference; Ex. 1, Parmer Depo., 6:3-5; 23:8-23; 68:22-70:19.)

## D. **Plaintiff Dorman Was Initially Paid Overtime.**

Cytex initially paid Ms. Dorman an hourly wage and overtime premiums for her hours over forty in a single workweek. (Ex. 1, Parmer Depo., 82:3-85:18.) Effective February 20, 2010, Cytex reclassified Ms. Dorman from hourly non-exempt to salaried exempt. (*Id.*) Her job duties did not change at the time of this conversion from hourly to salaried. (*Id.*) She no longer received overtime based solely on the fact that she was now "salaried." (*Id.*)

6

**E.     Plaintiff Dorman's Final Work As A Liaison Between The Sales And Warehouse Employees.**

Toward the end of her employment, Dorman's principal job functions were to coordinate the shipment of sales orders. (Ex. 1, Parmer Depo., 81:23-82:10.) In this order processing capacity, she acted as a liaison between the warehouse/shipping and receiving and sales teams (including, but not limited to, Cindy Hua, Leslie Gamble, and Glenna Watts) to coordinate the sales packages that were shipped on a daily basis. (Ex. 1, Parmer Depo., 80:8-81:6; Ex. 2, Miles Depo., 71:4-8 ("The customer service and the sales group worked with Anne [Dorman] on their orders. And since almost every order we have is custom, it requires special instruction, special coordination; and oftentimes, it's unique from the last one to the next one.".)

After she was terminated effective February 9, 2011, Defendants replaced Ms. Dorman with another Cytex employee, Debra Martinez (who is a putative class member). (Ex. 1, Parmer Depo., 119:4-20; Ex. 2, Miles Depo., 148:3-23; 151:22-152:4.)

**F.     Plaintiff DeFrancesco's Work In The Accounting Department.**

Plaintiff Donna DeFrancesco was hired by Cytex as a salaried employee on January 8, 2010. (Ex. 2, Miles Depo., 191:4-19.) Though she did not have an official title (Cytex does not utilize job titles[4]), her primary functions at the company included bookkeeping roles such as payroll, accounts receivable and accounts payable. (Ex. 5, DeFrancesco Depo., 57:12-60:24; Ex. 4, Dorman Depo., 22:25-23:20; Ex. 2, Miles Depo., 145:5-19; Docket No. 10, ¶ 58 ("Defendants admit that in her position as AR/AP Clerk, DeFrancesco was responsible for entering employees into the payroll system for Cytex Plastics.").)

---

[4] Ex. 2, Miles Depo., 26:14-27:20 ("Cytex didn't really have job titles."); 68:8-10; 89:3-16 ("We didn't really have titles at Cytex."); 151:22-152:2 ("Again, we don't have job titles per se . . . "); 204:8-19; 209:17-22 ("Again, we don't have titles. If we can get away from the title business –"); Ex. 1, Parmer Depo., 37:24-38:24; 41:1-14; 139:12-16; 156:18-157:2 ("Again, we didn't get hung up on titles at Cytex."); 203:14-19; 211:1-10 ("Again, I've indicated to you that we're not big on titles. I've been called operations manager, general manager, and probably other things. And I put 'Cytex Plastics' instead of 'RDC/Cytex Plastics.' We use those terms interchangeably all the time.").

7

Plaintiff Dorman had performed Ms. DeFrancesco's duties before and was classified as non-exempt when she did the job and while training DeFrancesco. (Ex. 2, Miles Depo., 114:2-14; Ex. 4, Dorman Depo., 27:14-28:22.) Ms. DeFrancesco was also trained by Todd Latham and Gerald Awbrey, both putative class members. (Ex. 5, DeFrancesco Depo., 57:12-60:24; 63:15-66:1.)

After Mr. Latham resigned his employment with Cytex on October 31, 2010, DeFrancesco assumed his position. (Ex. 5, DeFrancesco Depo., 63:15-66:1.) During the time that Ms. DeFrancesco was performing Mr. Latham's former position, two women named Ricki Tullos and Melinda assumed DeFrancesco's former A/R and A/P functions, and they are both additional putative class members. (Ex. 5, DeFrancesco Depo., 55:11-58:10.)

When John Holt was hired in March of 2011, Ms. DeFrancesco returned to the A/R and A/P position she was hired for, and Mr. Holt assumed the work that Todd Latham had done before he resigned and that DeFrancesco assumed in the period between November 2010 and Holt's hiring in March 2011. (Ex. 1, Parmer Depo., 137:22-138:7; Ex. 2, Miles Depo., 203:12-18.) After DeFrancesco was terminated, Holt was also assigned Human Resource functions that DeFrancesco had handled during her employment (and Todd Latham before her). (Ex. 2, Miles Depo., 24:13-25:6; 113:6-9; 218:19-24.) Mr. Holt is, therefore, another putative class member, and the signatory to the exemplar "release" that Cytex presented to recipients of unsolicited back wage payments after this lawsuit was filed. (*See* Ex. 7 [Filed Under Seal].)

After DeFrancesco was terminated, another employee and putative class member, Elizabeth Rodriguez, assumed other job functions that had been Ms. DeFrancesco's. (Ex. 2, Miles Depo., 205:12-16.)

## G. Plaintiff Sherri Reagin's Sales/Customer Service Work.

Sherri Reagin is a former employee who was employed by Cytex until in or about the first week of January 2009. (*See* Docket No. 5, Plaintiffs' First Amended Complaint, ¶ 26 & Docket No. 10, Defendants' Answer, ¶ 26 (admitting the allegations of Paragraph 26 of Plaintiffs' Amended Complaint.). Mrs. Reagin worked in the inside sales/customer service department. (*See* Docket No. 5, ¶ 27 & Docket No. 10, ¶ 27 (admitting the allegations of Paragraph 27 of Plaintiffs' Amended Complaint).

Though she was paid overtime for hours she worked over 40, her commission payments were not factored into her regular rate of pay and overtime earnings. (Ex. 9, Exemplar Paystubs for S. Reagin.) Many sales/customer service department employees were among the employees that Cytex recently reclassified from exempt to non-exempt after this lawsuit was filed. (Ex. 1, Parmer Depo., 230:1-6.) Mr. Parmer testified there are about 6-7 people in Cytex's sales and customer service department. (Ex. 1, Parmer Depo., 114:7-11.) All commissioned employees whether overtime eligible or not are similarly situated to Mrs. Reagin because they were denied overtime wages as a whole or were denied overtime wages on their commission payments. *See* 29 C.F.R. § 778.117 (stating that commissions must be included in the overtime rate of pay).

## H. Plaintiff Corey Reagin's Print And Bind Production Work.

Corey Reagin is a former employee who was employed by Cytex from August 2001 until on or about August 2, 2010. (*See* Docket No. 5, ¶ 24 & Docket No. 10, ¶ 24 (admitting the allegations of Paragraph 24 of Plaintiffs' Amended Complaint).) Mr. Reagin worked in the print and bind production portion of the Cytex facility. (Ex. 1, Parmer Depo., 215:23-223:18; Ex. 5, DeFrancesco Depo., 224:5-25.)

9

## IV. CONDITIONAL CERTIFICATION SHOULD BE GRANTED.

### A. The Putative Class Must Be Similarly – Not Identically – Situated.

The FLSA merely requires that plaintiffs be "similarly—not identically—situated" to pursue their claims collectively. *Falcon*, 580 F. Supp.2d at 534. "The court need not find uniformity in each and every aspect of employment to determine a class is similarly situated." *Watson v. Travis Software Corp.*, 2008 WL 5068806, * 5 (S.D. Tex. Nov. 21, 2008) (Rosenthal, J.). When determining whether a class should be conditionally certified the evidence needed is minimal and "the existence of some variations between potential claimants is not determinative of lack of similarity." *Camp v. Progressive Corp.*, 2002 WL 31496661, * 5-7 (E.D. La. Nov. 8, 2002). Courts merely look for "**a reasonable basis** for the allegation that a class of similarly situated persons exists." *Watson*, 2008 WL 5068806 at *5.

### B. The Court May Certify A Class Of Multiple Job Titles.

Plaintiffs need to show only that they were the victims of the **same policy** – here, that salary precludes overtime. *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp.2d 807, 811 (S.D. Tex. 2003) (Atlas J.) (**conditional certification granted when Plaintiffs in different job titles were affected by a policy that salary precluded overtime and Defendant was actively attempting to settle claims with current and former employees**); *Falcon,* 580 F. Supp.2d at 541 (denying decertification when Plaintiffs were subject to the same policy which mandated off-the-clock time.); *Ebbs v. Orleans Parish School Bd.*, 2007 WL 2127699 (E.D. La. July 24, 2007) (conditionally certifying class that included bus drivers, custodians, lunchroom workers, security guards, secretaries, and teachers' aides that were subject to the policy of not being paid overtime). In this case, putative Plaintiffs were all subject to the same policy that salary precludes overtime. Soon after this suit commenced, putative class members who were still

10

employed at Cytex were offered (invalid) settlements of their overtime claims. Along with their signing of settlements, they were reclassified as a group to be overtime eligible.

Certification of classes with multiple job titles are common because policies and duties, not titles determine whether workers are similarly situated. *Beall v. Tyler Techs., Inc.*, 2009 WL 1766141 *2-3 (E.D. Tex. June 23, 2009) (conditionally certifying a nationwide class of ten IT related job positions); *Camp*, 2002 WL 31496661 *4 (noting that "[v]ariations in title, salary, and geographic location are merely factors to be considered and are not dispositive," and granting nationwide certification for six different job titles);; *Herring v. Hewitt Associates, Inc.*, 2007 WL 2121693 *1 & 6 (D. N.J. July 24, 2007) (certification of three jobs, each with its own job code, though both plaintiffs held a single title); *Champneys v. Ferguson Enters. Inc.*, 2003 WL 1562219 *5-6 (S.D. Ind. Mar. 11, 2003) (granting certification for class of "thousands" of employees "who performed similar functions," based in part on two class members providing affidavits as to "similar job descriptions"); *Ritzer v. UBS Fin. Servs., Inc.*, 2008 WL 4372784 *3-4 (D.N.J. Sep. 22, 2008) (certifying class of all technical support representatives even though the class included four different job titles).

## C.   The Four Named Plaintiffs And Putative Class Members Are Similarly Situated.

### 1.   *Same facility.*

Each of the putative class members worked for Cytex in a single facility Houston (now located at 12955 Emmett Road). (Ex. 2, Miles Depo., 57:25-58:10.) Cytex also has a branch in Indiana. (*Id.*) This Motion is not intended to cover any employees of the Indiana branch.

In 2011, there were approximately 40 employees working for Cytex in Houston. (Ex. 2, Miles Depo., 58:11-17.) Throughout 2010, there were between about 40-60 employees at Cytex. (Ex. 2, Miles Depo., 58:18-22.) In 2009, there were between about 50-60 employees at Cytex.

11

(Ex. 2, Miles Depo., 59:23-59:5.) Plaintiffs estimate that there were about 10-20 salaried employees at any given point within the limitations period.

### 2. *Same managers.*

All the putative class members reported to the same executive managers, including Curtis Parmer (General Manager), Ellen Miles (Administrator), Ken Descamps and Defendant David Burg (President), who made all salary-classification decisions. (Ex. 2, Miles Depo., 136:26-137:7; 60:4-12; Ex. 1, Parmer Depo., 83:19-84:21; 140:10-23.)

### 3. *Subject to same policies.*

Each of the putative class members was a victim of the same policy at Cytex that "salaried" meant overtime "exempt," without *any* regard to the job duties performed by the employee. (Ex. 1, Parmer Depo., 84:15-85:18 & 125:17-20; Ex. 2, Miles Depo., 82:12-85:3.) After Plaintiffs filed this suit, Cytex clearly and irrefutably recognized there were other employees who were similarly situated to Plaintiffs and set about reclassifying them as non-exempt and offering them payments for previously unpaid overtime.

### 4. *Given settlement offers and reclassified.*

On October 27, 2011, Defendants made Rule 68 Offers of Judgment to Plaintiffs Dorman, DeFrancesco, C. Reagin, and S. Reagin. (Ex. 6, Walter Affidavit, ¶ 12.) At about the same time, the putative class members were given settlement offers and release forms to sign. (Ex. 1, Parmer Depo., 226:4-230:25; Ex. 2, Miles Depo., 230:25-232:9; Ex.7 [Filed Under Seal].) Attempts at settlement serve as evidence that a similarly situated class exists, especially when a broad swath of employees are affected. *Villatoro*, 286 F. Supp. 2d at 811 ("Kim Son's actions to obtain releases and settlement agreements from its current and former employees

12

concerning the claims in this lawsuit are circumstantial evidence that there are other similarly situated individuals.").

The subsequent reclassification of putative class members as overtime eligible also demonstrates that they are similarly situated to Plaintiffs. *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 752 (N.D. Ill. 2010); *Bollinger v. Residential Capital, LLC*, 761 F. Supp.2d 1114, 1120 (W.D. Wash. 2011).

## 5. *Back-up for one another and/or similar position.*

There are four named Plaintiffs who worked in four different departments at Cytex, and each Plaintiff is similarly situated to his/her departmental co-workers. Again, (1) the accounting (a/k/a finance) department employees are similarly situated to Plaintiffs DeFrancesco and Dorman; (2) the sales/customer service department employees are similarly situated to Plaintiffs Dorman and Sherri Reagin; (3) the print and bind production employees are similarly situated to Plaintiff Corey Reagin, and (4) the warehouse control/shipping and receiving employees are similarly situated to Plaintiff Dorman.

Cytex also had a policy – referred to as the "Fantastic Friday's" program -- of allowing salaried employees time off on alternating Fridays.     (Ex. 1, Parmer Depo., 150:14-173:9.) Cytex's General Manager, Parmer (with input from the other executive managers, Miles, Descamps and Burg), would divide the salaried employees into teams to ensure that there was sufficient coverage in all key areas each Friday. (*Id.*)

In addition to the interchangeability of employees on alternating Fridays off, Plaintiff Dorman, in particular, was familiar with many of the jobs at the Company and was used to back up other employees as needed. (Ex. 2, Miles Depo., 61:19-63:14.) Indeed, the alleged reason for Dorman's termination (the day after she engaged in protected activity and complained to Cytex's

13

owner and President, David Burg, about a violation of ERISA in delaying 401K deposits to employee accounts) is that her schedule forced other sales support employees to perform her functions when she left the office at 3:00 pm. (Ex. 2, Miles Depo., 85:20-87:22 ("Anne's position dealt very closely with the office staff who work 8:00 to 5:00 and coordinated the effort again of getting orders properly processed, labeled, and shipped out of the warehouse for shipping. With her hours not coinciding with the people that she needed to work with, it was causing difficulties and we had asked her several times to conform her hours closer to the office hours and she refused."); *see also* Ex. 1, Parmer Depo., 155:15-156:14 (testifying that sales, customer service, and shipping and receiving personnel would cover for Anne in her absence).)

### 6. *The sales/customer service employees received commissions for which they were not paid overtime.*

Mrs. Reagin as a non-exempt employee clearly received commissions for which she was not paid overtime. (Ex. 9, Exemplar Paystubs for S. Reagin.) Her salaried counterparts also received commissions for which they were not paid overtime, because they never received overtime at all. (*See* Ex 1, Parmer Depo., 84:15-85:18 & 125:17-20; Ex. 2, Miles Depo., 82:12-85:3.) Commissions should be calculated into overtime compensation. 29 C.F.R. § 778.117; *Donovan v. Grantham*, 690 F.2d 453, 457 (5th Cir. 1982). Mrs. Reagin is thus similarly situated to salaried and non-salaried sales and customer service employees, because all these employees were denied overtime. *McCauley v. First Option Mortg., LLC*, 2010 WL 3522316 (E.D. Mo. Sept. 2, 2010) (granting conditional certification based on allegations that defendant failed to compute commissions into the overtime rate).

14

## D. Other Personnel Who Were Denied Overtime May Want To Join This Collective Action.

Some district courts expect FLSA plaintiffs to present "evidence that other similarly situated individuals [may want] to join the lawsuit." *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, \*9 (S.D. Tex. Jan. 24, 2007) (Atlas, J.). Plaintiffs can satisfy this burden by showing that "at least a few similarly situated individuals seek to join the lawsuit." *Id.* Other Cytex workers, who have also been denied overtime pay, will join this suit if given the chance. Anne Dorman was the only named plaintiff when she sent Cytex a pre-suit draft of her Original Complaint on May 24, 2011 before filing suit. (Ex. 6, Walter Affidavit, ¶ 8.)

By June 23, 2011, Corey and Sherri Reagin had decided to join in the action with Ms. Dorman, and Plaintiffs' counsel sent Cytex's counsel notice of this by e-mail that same day. (Ex. 6, Walter Affidavit, ¶ 9.) After pre-filing settlement negotiations failed, Ms. Dorman and Mr. and Mrs. Reagin filed suit on June 27, 2011. (Ex. 6, Walter Affidavit, ¶ 10; Docket No. 1.) Thereafter, Plaintiffs filed a First Amended Complaint to add Donna DeFrancesco as an additional plaintiff on July 21, 2011. (Docket No. 5.) "The addition of two of the three Plaintiffs after the inception of this case is persuasive evidence that a putative class does exist." *See, e.g., Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*, 2006 WL 1007542 (S.D. Tex. Apr. 17, 2006) (Ellison, J.).

## V. PLAINTIFFS HAVE PROPOSED AN APPROPRIATE CLASS NOTICE.

When conditionally certifying a collective action, the district court has the "managerial responsibility to oversee the joinder of additional parties." *Hoffman-La Roche*, 493 U.S. at 171. This ensures that class members receive notice that is "timely, accurate, and informative." *Id.* at 172. Judge Atlas, like other federal district judges, endorses the use of class notice forms that are

15

"simple and to the point." *Foraker v. Highpoint Southwest Services, L.P.*, 2006 WL 2585047 *5 (S.D. Tex. Sept. 7, 2006) (Atlas, J.).

Plaintiffs have proposed such a Notice of Fair Labor Standards Act Lawsuit, which is virtually the same form of notice that Judge Atlas approved in *Foraker*. (*See* Proposed Order Granting Certification as a Collective Action.) The only substantive distinctions are (1) statements concerning a class members right to participate in this action irrespective of their execution of any purported "release" that Cytex presented to them along with unsolicited back wage payments (which is discussed further below); (2) reference to the FLSA's anti-retaliation provision; and (3) different language that better describes how attorneys' fees and costs will be handled.

## VI.    THE PURPORTED "RELEASES" THAT DEFENDANTS PRESENTED WITH UNSOLICITED BACK WAGE PAYMENTS ARE VOID WARRANTING ADDITIONAL CURATIVE LANGUAGE IN THE CLASS NOTICE.

The Supreme Court first addressed the validity of private waivers in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945). There, it looked at three instances of waiver where the *employer* directly approached the employee and had the employee sign a FLSA release form in exchange for overtime compensation owed. *Id.* The Court ruled that a claim for liquidated damages could not be waived through a release in this situation. *Id*; *McCumber v. Eye Care Ctr. of Am., Inc.*, 2011 WL 1542671 *2 (M.D. La. Apr. 20, 2011). The next year, the Supreme Court once again examined the validity of private employee waivers of FLSA rights in *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946). The employer in *Gangi* had failed to make overtime compensation payments, believing his employees were not *covered* under the FLSA, and, under suit by his employees, obtained a release of FLSA claims in exchange for payment. *Id.* at 111-

16

12. The Court found that "the remedy of liquidated damages cannot be bargained away by bona fide settlements of disputes *over coverage*." *Id.* at 114 (emphasis added).

Like *Brooklyn Bank* this case involves agreements that were solicited by Defendants. (Ex. 1, Parmer Depo., 226:4-230:25; Ex. 2, Miles Depo., 230:25-232:9.) No bona fide dispute of the hours of overtime worked could have existed, because Defendants calculated the overtime payments (without liquidated damages) based on the time records that Defendants kept. (*See* Ex. 7 [Filed Under Seal].) Thus, no valid settlement could possibly arise from these facts.

Because of the potential for abuses in employee collective actions, "a district court has both the duty and the broad authority to exercise control over a collective action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Comp. v. Bernard*, 452 U.S. 89, 100 (1981). Courts have limited communications with absent class members "where the communications were misleading coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the lawsuit." *Belt v. EmCare, Inc.*, 299 F. Supp.2d, 664, 667 (E.D. Tex. 2003) (applying this standard to an FLSA collective action).

In *Belt*, the court found that an employer's communication was misleading, coercive and undermined the purposes of the collective action when the communication mischaracterized an FLSA collective action and the damages available. *Id.* at 668. **In contrast, the potential damage to class members is far greater here, because Cytex has mischaracterized the fundamental right of class members to join the collective action by actively attempting to deter them from doing so with ostensible "release" agreements.** (*See* Ex. 7 [Filed Under Seal].)

Not only has Cytex mischaracterized the rights of class members but it has **actively threatened class members** who do not respect the release through a provision that holds class

17

members accountable for any attorneys' fees incurred defending the release even if it is ultimately reformed by this Court. *Id.* The booming message to putative class members is that even if they win the battle to get their releases overturned they may still lose the war by having to pay the attorneys' fees of defense counsel. The language of the release disturbingly reveals that Defendants know the releases are void, but are desperately seeking any weapon to hold class members hostage to their void settlement terms.

The signing of Releases during class proceedings can be particularly misleading. **Numerous courts have held that Releases signed during class proceedings must be accompanied by information regarding the pending class action and a knowing waiver of rights to participate in the action, even if the class action has not been certified.** *Friedman v. Intervet, Inc.*, 2010 WL 3087432 *4 (N.D. Ohio Aug. 6, 2010); *Westerfield v. Quizno's Franchise Co.*, 2007 WL 1062200 *3 (E.D. Wis. Apr. 6, 2007); *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132 *4-7 (S.D.N.Y. Sept. 7, 2001); *see also Williams v. Securitas Sec. Services USA, Inc.,* 2011 WL 2713741 *3 (E.D. Pa. July 13, 2011) (striking arbitration agreement that putative class members signed while conditional certification was pending).

Cytex's purported "release" agreement makes no mention whatsoever of this action – and instead acts as though the Company randomly and fortuitously decided to issue back wage payments of salaried employees. (*See* Ex. 7 [Filed Under Seal].) In this case, an even greater potential for abuse is present because putative plaintiffs are actively being threatened by the releases. Furthermore, plaintiffs cannot, as a matter of law, waive their rights without a bona fide dispute under the FLSA but they may believe they *have* in light of the terms of Cytex's ostensible "release" agreement.

18

## CONCLUSION

This Court has the opportunity to resolve a number of individual disputes by inviting all similarly situated employees to join in this suit. Plaintiffs respectfully ask that the Court conditionally certify their proposed class, approve their proposed Notice of Fair Labor Standards Act Lawsuit, provide notice that releases obtained by Cytex post-suit are voidable, and compel Cytex to promptly turn over the contact information necessary to issue the Notices.

Respectfully submitted,

_/April L. Walter/_

**Michael A. Starzyk**
Attorney-in-Charge
Texas Bar No. 00788461
Southern District of Texas Bar No.16926
**April L. Walter**
Texas Bar No. 24052793
Southern District of Texas Bar No. 713287
**Stephen Ricks**
Texas Bar No. 00788278
Southern District of Texas Bar No. 36039
**Hessam Parzivand**
Texas Bar No. 24071157
Southern District of Texas Bar No. 1129776


**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380
T: [281] 364-7261
F: [281] 364-7533

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Defendant Cytex Plastics, Inc. regarding this Motion and that it opposes this Motion.

_/April L. Walter/_
April L. Walter

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day February, 2012, I served the foregoing on the following:

Teresa S. Valderrama
Meredith R. Leitner
Jackson Lewis LLP
1415 Louisiana Street, Suite 3325
Houston, TX 77002-7360
Attorneys for Defendants

_/April L. Walter/_
April L. Walter

20